# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

LIGHT YEARS AHEAD, INC, a )
Delaware Corporation, ASYLUM )
HOLDINGS, LLC, a Nevada Limited )
Limited Liability Company, and Kevin )
Murphy, Individually, )
        Plaintiffs, )
)
               v. )    C.A. NO. N20C-12-181 DJB
)
VALVE ACQUISITION, LLC, a )
Delaware Limited Liability Company, )
        Defendant. )

*Argued: September 21, 2021*
*Decided: December 22, 2021*

## OPINION

### UPON DEFENDANT'S MOTION TO DISMISS: GRANTED IN PART; DENIED IN PART.

Before the Court is a Motion to Dismiss under Superior Court Civil Rule of Procedure 12(b)(6) for Plaintiffs' failure to state a claim for which relief can be granted. For the reasons below, the Motion is GRANTED in part and DENIED in part.

## A. BACKGROUND

This litigation arises out of what eventually became a contentious business relationship between all parties. Plaintiff Kevin Murphy (hereinafter "Murphy") is the CEO of Light Years Ahead, Inc. (hereinafter "Light Years"), a Delaware

-1-

Corporation doing business in Illinois. Light Years was formerly known as Advanced Valve Technologies, Inc., (hereinafter "AVT"). AVT operated a business that specialized in designing and creating water and sewer valve systems. In May 2018, Murphy sold AVT to Defendant Valve Acquisition, LLC (hereinafter "Valve Acquisition") and the former AVT business post-sale became Light Years. At the time of the sale, Murphy, through AVT, had been negotiating with a company, Cadent Gas (hereinafter "Cadent") in the United Kingdom (hereinafter "UK") to adapt its valve system to the gas industry and launch this adaptation into the UK (hereinafter "the Cadent deal").

With this Cadent business deal looming, Plaintiffs and Valve Acquisition entered into a series of agreements which are relevant to this instant litigation. The first of which was an Asset Purchase Agreement (hereinafter "APA"), which delineated the terms of the sale of AVT to Valve Acquisition. The second was an Employment Agreement, in which Valve Acquisition hired Murphy, at will, to be a strategy advisor and to help oversee the Cadent deal following the sale of the AVT business. The third was a Lease Agreement, in which Plaintiff Asylum Holdings, LLC.,[1] agreed to lease the buildings the ATV business was housed in at the time of the sale to Valve Acquisition for the purpose of furthering and not disrupting the

---

[1] Plaintiff Asylum Holdings, LLC (hereinafter "Asylum") is a separate entity, owned and operated by Plaintiff Kevin Murphy.

-2-

business.  Finally, a Commission Agreement which addressed the potential business opportunity in the UK with Cadent, in which Light Years was to earn 8% commission from specified product sales in the UK market.

These business relationships took a turn for the worse in October 2018, when Valve Acquisition fired Murphy and his brother from their at-will employment.[2] Prior to that point, and up until his firing, Murphy had been working with Cadent and had planned a move to the UK in order to better manage that aspect of the business. Despite his termination, Murphy followed through with his plans to relocate to the UK.  On the flight, Murphy suffered a medical emergency that required hospitalization.  While hospitalized, on October 26, 2018, Valve Acquisition and Murphy executed a formal, written Separation Agreement.  The Separation Agreement provided Murphy a severance package, and in exchange, Plaintiffs agreed to, among other things, a release from bringing any claims against Valve Acquisition that arose out of or related to his employment or termination.

After Murphy's termination, the business relationship with Cadent began to fall apart.  Valve Acquisition hired a salesman to replace Murphy and oversee the Cadent deal.  After two failed product trials, Valve Acquisition then hired an engineer

---

[2]      In addition to hiring Kevin Murphy, Valve Acquisition additionally entered into an at-will employment contract with Murphy's brother, son and various other relatives.

to manage the Cadent deal. As a result of the failures, Cadent asked Valve Acquisition to perform additional product trials. Murphy has alleged that Valve Acquisition delayed the requested trials to the point that the project eventually lost its funding. Additionally, Murphy alleged that Valve Acquisition refused to dedicate additional resources into the Cadent deal. According to Murphy, as of the filing of the Amended Complaint, Light Years has received about $100,000 in commission payments on UK sales to Cadent; far below its expectations when it entered into the Commission Agreement.

The parties' relationship further deteriorated when in the fall of 2019, issues developed surrounding the Lease Agreement. Murphy had discovered that Valve Acquisition had undertook unauthorized renovations to one of the leased properties in violation of the Lease Agreement. Murphy, assumingly acting on behalf of Asylum, visited the property the following day to evaluate the extent of the renovations. Later that morning, a Valve Acquisition officer called Murphy and the two engaged in a heated exchange. On September 12, 2019, Asylum (through Murphy) sent a notice of default letter to Valve Acquisition. That same day, Valve Acquisition fired Murphy's two sons and stepson from their at-will employment and sent Murphy a letter accusing him of soliciting employees in violation of the

Employment Agreement.[3]

Disputes over the Lease Agreement did not end there. Asylum contracted with a construction company to remove and replace the driveway to the leased premises. On October 17, 2019, the day work was scheduled to begin, Valve Acquisition employees engaged in a heated argument with Murphy and the workmen.

Ultimately, Valve Acquisition sued Plaintiffs in the Chancery Division of the Circuit Court of Cook County, Illinois on October 31, 2019.[4] In its complaint (hereinafter "the Illinois Action"), Valve Acquisition alleged that following Murphy's termination, he engaged in wrongful and harassing conduct that interfered with its business operations. As part of the lawsuit, Valve Acquisition sought a restraining order against Murphy. Its complaint additionally included allegations relating to the: (1) renovations made to the leased commercial buildings owned by Asylum; (2) harassing conduct by Murphy's stepson;[5] (3) dispute over driveway

---

[3] While the Amended Complaint states this is a violation of the Separation Agreement, the provision prohibiting such behavior is actually found in the Employment Agreement. Def.'s Mot. to Dismiss, Ex. H § 10, Mar. 26, 2021 (D.I. 17).

[4] Advanced Valve Tech., LLC v. Asylum Holdings, LLC, No. 19 CH 12721 (Judge Cohen).

[5] Valve Acquisition had fired Murphy's stepson following this alleged harassing conduct, claiming he engaged in "credible threats of violence" against Valve Acquisition employees. These claims were made in conjunction with the identical allegations against Murphy in the Illinois Action complaint. *See* Def.'s Mot. to Dismiss, Ex. J ¶ 51, Mar. 26, 2021 (D.I. 17).

replacement; and (4) unauthorized solicitation of Valve Acquisition employees by Murphy.

In the midst of the Illinois Action, on August 5, 2020, Valve Acquisition sent Light Years a claim for indemnification regarding an outstanding tax issue of the AVT business prior to the sale. In that claim, Valve Acquisition threatened to set off the value of the tax claim against future commission payments pursuant to its rights under the Commission Agreement. Ultimately, Valve Acquisition did not withhold any commission payments and paid the tax claim, despite claiming it had a contractual right not to do so.

A little over a year into the Illinois litigation, the parties agreed to settle and resolve all claims. To document the resolution, the parties executed a Settlement Agreement on November 6, 2020, waiving the rights of both parties to bring claims against each other that were "as a result of, or arising out of, the events and transactions alleged in the [Illinois Action]."[6] Consequently, the Illinois Court dismissed the action on November 9, 2020.

A mere six (6) weeks later, on December 18, 2020, Plaintiffs filed the instant action. In lieu of an Answer, Defendant filed a Motion to Dismiss. Following that, the parties entered into a Stipulation that would allow Plaintiffs to amend their

---

[6]     Def.'s Mot. to Dismiss, Ex. I, §§3(A)-(D).

Complaint to address Defendant's allegations that the Complaint is violative of the Settlement Agreement reached in Illinois. Plaintiffs filed their Amended Complaint on March 21, 2021. Defendant then renewed its Motion to Dismiss on March 26, 2021. Plaintiffs filed their Answering Brief in Opposition on April 26, 2021, to which Defendant replied on May 17, 2021. Following a re-assignment of this case amongst Judicial Officers, the Court held argument on September 9, 2021. This is the Court's decision.

### B. PLAINTIFFS' AMENDED COMPLAINT

Plaintiffs' Amended Complaint is comprised of six counts: (1) breach of the APA; (2) breach of the Commission Agreement; (3) breach of the Lease Agreement; (4) breach of the implied covenant of good faith and fair dealing; (5) declaratory judgment; and (6) intentional infliction of emotional distress. Following oral argument on September 21, 2021, the parties stipulated to the dismissal of Count II of the Amended Complaint.[7]

Each remaining claim will now be reviewed under the appropriate standard for viewing a Motion to Dismiss under Rule 12(b)(6).

### C. STANDARD OF REVIEW

"Under Superior Court Civil Rule 12(b)(6), 'the legal issue to be decided is,

---

[7] See D.I. 30.

whether a plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint.'"[8] Under that Rule, the Court will "(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as "well pleaded" if they give the opposing party notice of the claim, (3) draw all reasonable inferences in favor of the non-moving party, and (4) not dismiss the claims unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances."[9]

"The Court, however, need not accept conclusory allegations unsupported by specific facts or … draw unreasonable inferences in favor of the non-moving party."[10] "If any reasonable conception can be formulated to allow Plaintiffs' recovery, the motion must be denied."[11] "The complaint generally defines the universe of facts that the trial court may consider in ruling on a Rule 12(b)(6) motion…."[12] "[F]or carefully limited purposes,"[13] however, the Court "may consider documents outside

---

[8]     *Vinton v. Grayson*, 189 A.3d 695, 700 (Del. Super. 2018) (quoting Superior Court Civil Rule 12(b)(6)).

[9]     *Id.* (quoting *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011).

[10]    *Intermec IP Corp. v. TransCore, LP*, 2021 WL 3620435, at *7 (Del. Super. Ct. Aug. 16, 2021) (citing *Prince v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011), overruled on other grounds by *Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255, 1277 (Del. 2018)).

[11]    *Vinton*, 189 A.3d at 700 (citing *Cent. Mortg. Co.*, 27 A.3d at 535).

[12]    *In re General Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006).

[13]    *Id.* at 169.

the pleadings when the document is integral to a plaintiff's claim and incorporated into the complaint[.]"[14]  "[A] claim may be dismissed if allegations in the complaint or in the exhibits incorporated into the complaint effectively negate the claim as a matter of law."[15]

Given this standard and the facts presented, the Court finds it appropriate and necessary to review and apply the APA, the Employment Agreement, the Commission Agreement, the Lease Agreement, the Separation Agreement and the Illinois Settlement Agreement.

### D. ANALYSIS

#### COUNT I – BREACH OF THE APA

In Count I of the Amended Complaint, Plaintiffs allege Defendant breached the APA by way of an August 5, 2020, letter sent to Plaintiffs Light Years and Murphy requesting indemnification for alleged tax moneys owed by the AVT business prior to the APA.[16]  Section 6.8 of the APA governs the responsibility for tax payments, tax filings, and the handling of tax disputes between Light Years and

---

[14]  *Windsor I, LLC v. CWCap. Asset Mgmt. LLC*, 238 A.3d 863, 873 (Del. 2020) (internal quotation marks and citations omitted).

[15]  *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001).  The Amended Complaint at issue here did not include any attachments of the referenced agreements to be examined.  The Court was only privy to these documents when it received the Defendant's Motion to Dismiss.

[16]  Def.'s Mot. to Dismiss, Ex. M.

Valve Acquisition. Specifically, Plaintiffs allege that: "[t]he APA is a valid and binding contract between the Seller and the Buyer"; "[b]ecause [Defendant] failed to allow [] Murphy to defend the Seller in tax matters, the Buyer is liable for breach of contract."[17] Count I further alleges that "the Seller suffered damages because of the breach of contract." Nowhere in these allegations does the Amended Complaint specify which Plaintiffs are setting forth this allegation, however, the only Plaintiffs who can advance such a claim is Light Years and Murphy, as only they and Defendant were parties to the contract. Defendant moves to dismiss this count, arguing there was no breach of the APA and even if there was, Plaintiffs cannot show damages.

The parties' argument centers on the meaning of Section 6.8(g) of the APA, which delineates Defendant's obligations to allow Murphy a chance to litigate and resolve any "pre-closing" tax matters for the AVT business.[18] Delaware law governs the APA,[19] and under Delaware law, a contract's proper construction is a question of law.[20] When interpreting a contract, the Court prioritizes the parties' intentions as

---

[17] Am. Compl. ¶¶ 60, 62, Mar. 12, 2021 (D.I. 13).
[18] The APA defines "tax matter" as "any inquiry, assessment, proceeding or other similar event relating to taxes of the Seller [AVT] for any pre-closing tax period." Section 6.8(g) of the APA. Therefore, any tax matter relating back to before the sale of the AVT business would necessarily be included.
[19] Def.'s Mot. to Dismiss, Ex. B, Asset Purchase Agreement (hereinafter "APA") § 10.9(a).
[20] *Exelon Generation Acquisitions, LLC v. Deere & Co.*, 176 A.3d 1262, 1266-67 (Del. 2017).

reflected in the four corners of the contract.[21]  To that end, a Court must construe "the agreement as a whole and [give] effect to all its provisions."[22]  "A court must accept and apply the plain meaning of an unambiguous term in the context of the contract language and circumstances, insofar as the parties themselves would have agreed *ex ante*."[23]  A contract is ambiguous when a provision is susceptible to more than one meaning.[24]  "A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction."[25]  "Absent some ambiguity, Delaware courts will not destroy or twist policy language under the guise of construing it."[26]

As a question of law, the Court can resolve contract interpretation on a motion to dismiss.[27]  "In deciding a motion to dismiss, the trial court cannot choose between two differing reasonable interpretations of ambiguous provisions."[28]  Dismissal is

---

[21]     *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 145 (Del. 2009) (citing *E.I. du Pont de Nemours & Co. v. Shell Oil Co.*, 498 A.2d 1108, 1114 (Del. 1985).

[22]     *In re Viking Pump, Inc.*, 148 A.3d 633, 648 (Del. 2016) (internal quotation marks omitted).

[23]     *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 740 (Del. 2006).

[24]     *GMG Capital Invs., LLC v. Athenian Venture P'rs I, L.P.*, 36 A.3d 776, 780 (Del. 2012).

[25]     *Id.* (internal quotation marks omitted).

[26]     *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992).

[27]     *Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006).

[28]     *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 615 (Del. 2003) (citation omitted).

proper only if movant's interpretation "is the *only* reasonable construction as a matter of law."[29]

To survive a motion to dismiss for failure to state a breach of contract claim, the plaintiff must demonstrate: (1) the existence of a contract; (2) the breach of an obligation imposed by that contract; and (3) resulting damages to the plaintiff.[30]

### 1. VALVE ACQUISITION DID NOT BREACH SECTION 6.8(G) OF THE APA

On August 5, 2020, Valve Acquisition sent Light Years a claim for indemnification ("Indemnification Letter") for Light Years' failure to file or pay certain pre-closing taxes.[31] As a result, Valve Acquisition informed Light Years that it intended to set off $164,469.68 from future commission payments to satisfy the outstanding tax liability.[32] After correspondence between the parties, Valve Acquisition ultimately agreed to not withhold any funds and paid the full commission amount on October 15, 2020.[33]

Light Years contends that Valve Acquisition's failure to afford Murphy the opportunity to "control the defense, compromise or other resolution" in the pre-closing tax matter constituted a breach of Section 6.8(g) of the APA. Light Years

---

[29]     *Id.* (citing *Vanderbilt Income and Growth Assocs. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996) (emphasis in original).
[30]     *Id.* at 612.
[31]     Def.'s Mot. to Dismiss, Ex. M.
[32]     *Id.*
[33]     Am. Compl. ¶ 55.

avers damages, in that it incurred legal and accounting fees defending against Valve Acquisition's Indemnification Letter. Valve Acquisition asserts that Light Years failed to demonstrate the existence of a breach and resulting damages because (1) Light Years' rights under Section 6.8(g) of the APA were not triggered because the tax matter was not before a "Governmental Authority"[34]; (2) Valve did not withhold any commission payments from Light Years; and (3) under Section 10.1 of the APA, Light Years is responsible for its own costs and expenses.

Section 6.8(g) provides Light Years with certain rights relating to pre-closing taxes. Specifically, Section 6.8(g) states:

> This *Section 6.8(g)* and not *Section 8.5* shall control any inquiry, assessment, Proceeding or other similar event relating to Taxes of the Seller for any Pre-Closing Tax Period (a "Tax Matter"). [Murphy] shall have the right to represent the interests of Light Years before the relevant Governmental Authority with respect to any Tax Matter relating to any Pre-Closing Tax Period and shall have the right to control the defense, compromise or other resolution of any such Tax Matter, including responding to inquiries and contesting, defending against and resolving any assessment for additional Taxes or notice of Tax deficiency or other adjustment of Taxes of, or relating to, such Tax

---

[34] "Governmental Authority" is defined in an exhibit to the APA, as "any federal, state, local or foreign government or political subdivision thereof, or any agency or instrumentality of such government or political subdivision, or any self-regulated organization or other non-governmental regulatory authority or quasi-governmental authority (to the extent that the rules, regulations or orders of such organization or authority have the force of Law), or any arbitrator, court or tribunal of competent jurisdiction." APA § 1.1.

Matter….[35]

The instant dispute hinges on the meaning of "any such Tax Matter." Light Years reads Section 6.8(g) to provide two distinct rights: (1) to represent its interests before a Governmental Authority regarding a Tax Matter and (2) to control the defense, compromise, or other resolution for all Tax Matters. Valve Acquisition asserts that the phrase "any such Tax Matter" does not refer to all Tax Matters; rather, the phrase refers only to Tax Matters before a relevant Governmental Authority.

The Court finds Valve Acquisition's interpretation to be the only reasonable interpretation. Light Years' reading of Section 6.8(g) is overbroad and not supported by the language of the APA. Light Years asserts it has both the right to represent its interests in pre-closing tax disputes before a relevant Governmental Authority, as well as the right to control the defense in any pre-closing tax matter. Following Light Years' logic, the right to control all pre-closing tax disputes subsumes the right to control a pre-closing tax dispute before a relevant Governmental Authority.

Plaintiffs' reading ignores the qualifier "such." Delaware law permits Courts to use the dictionary to define generic terms.[36] Dictionaries define "such" as "of this

---

[35]   APA § 6.8(g).

[36]   *Blue Cube Spinco LLC v. Dow Chem. Co.*, 2021 WL 4453460, at *8 (Del. Super. Sept. 29, 2021) (citing *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 728 (Del. 2006)).

or that kind" or "that or those; having just been mentioned."[37]  Light Years' assertion that "any such Tax Matters" refers to all Tax Matters belies the plain meaning of "such."  Rather, the Court finds Valve Acquisition's interpretation that "any such Tax Matter" refers to a Tax Matter before a relevant Governmental Authority to be the only reasonable interpretation.  Accordingly, Light Years' rights under Section 6.8(g) of the APA were not triggered because the Tax Matter was not before a Governmental Authority and Valve Acquisition did not breach the APA by failing to allow Murphy to assume control of this pre-closing tax matter.

## 2. PLAINTIFFS FAIL TO PLEAD RESULTANT DAMAGES

Even if the Court were to find that Valve Acquisition breached Section 6.8(g), Light Years' Amended Complaint fails to sufficiently plead resulting damages.  Light Years admits that Valve Acquisition did not withhold any commission fees to satisfy the disputed pre-closing tax liability.  Instead, Light Years alleges that it requires further discovery to determine damages and incurred legal and accounting fees expended while investigating the disputed tax issue.[38]

Section 10.1 of the APA addresses each parties' responsibility for costs and expenses incurred under the APA.  Specifically, Section 10.1 states:

> Except as otherwise expressly provided herein, all costs
> and expenses, including, without limitation, fees and

---

[37]     *Such*, BLACK'S LAW DICTIONARY (11th ed. 2019).
[38]     Pls.' Answering Br. at 23, Apr. 26, 2021 (D.I. 20).

> disbursements of counsel, financial advisors and accountants, incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the Party incurring such costs and expenses, whether or not the Closing shall have occurred.[39]

Here, Valve Acquisition did not withhold any commission fees and remitted full payment to Light Years. Light Years' only cognizable claim for damages is the fees incurred to investigate and defend against the pre-closing tax dispute, but Section 10.1 dictates that each party is responsible for its own legal and accounting fees in connection with the APA. Accordingly, Light Years also fails to sufficiently plead resultant damages.

Under the standard set forth in Rule 12(b)(6), given the Court's findings, there is no reasonably conceivable set of circumstances here that allow recovery for Plaintiffs. Therefore, Valve Acquisition's Motion to Dismiss is Granted as to Count I.

### COUNT III – BREACH OF THE CONTRACT: THE LEASE AGREEMENTS

In its amended Count III, Plaintiff Asylum[40] alleges: "The Leases are valid binding contracts between Asylum and the Buyer…" and that "…Asylum performed its obligations under the Leases" Further, "[b]ecause [Defendant] renovated the 775

---

[39]   APA § 10.1

[40]   Again, the Amended Complaint fails to specify which Plaintiff is asserting this allegation. However, the Court is assuming it is only Plaintiff Asylum, as they are the only Plaintiff in privity to this contract.

Lively Drive Property without written permission from Asylum, the Buyer breached the Leases." As a result, Asylum pled that it "suffered damages because of the breach of contract."[41]  Given the Amended Complaint's brevity, the Court surmises from the submissions that Plaintiff is asserting that Valve breached the Lease Agreement by conducting unauthorized renovations on the leased property in violation of the terms of the Lease Agreement.   In Defendant's motion, it argues that the terms of the Settlement Agreement resolving the Illinois Action bars any such claim now.

In order to evaluate this claim, the Court now turns to the Settlement Agreement itself to assess its applicability.  The Settlement Agreement contained a limited release waiving Plaintiff's right to bring any claims against Valve Acquisition previously litigated in the Illinois Action.  Specifically, the release states:

> The Parties have further agreed to the following limited releases:
> . . .
> (C) The Asylum Released Parties hereby release [Valve Acquisition] from any and all claims and causes of action that the Asylum Related Parties **had, have, or may have** against [Valve Acquisition] as **a result of, or arising out of, the events and transactions alleged in the [Illinois Action]**.
> (D) The Murphy Released Parties hereby release [Valve Acquisition] from any and all claims and causes of action that the Murphy Released Parties **had, have or may have** against [Valve Acquisition] as **a result of, or arising out of, the events and transactions alleged in the [Illinois Action]**.

---

[41]     Am. Compl. ¶¶ 72-73.

(E) Notwithstanding the foregoing limited releases, neither [Valve Acquisition], the Murphy Released Parties nor the Asylum Released Parties **release any claims, defenses, or demands arising out of, or relating to**, . . . (e) **any claim** by the Asylum Released Parties and/or the Murphy Released Parties arising out of any of the three lease agreements attached to the [c]omplaint concerning or relating to the security deposit or **for breach of the lease agreements** that has **not accrued as of [November 6, 2020]**.[42]

Delaware courts recognize the validity of general releases.[43] In construing a release, the court must effectuate the intent of the parties as to its scope and effect based on the overall language of the document.[44] Broad release language "which generally follow a specific recital of the subject matter concerned are not to be given their broadest significance but will be restricted to the particular matters referred to in the recital."[45] "A clear and unambiguous release will [only] be set aside where there is fraud, duress, coercion, or mutual mistake concerning the existence of a party's injuries."[46]

Valve Acquisition contends that the Settlement Agreement bars Plaintiff Asylum's breach of the Lease Agreement claim. On October 31, 2019, Valve Acquisition commenced the Illinois Action asserting that Plaintiff Asylum, among

---

[42]    Def's. Mot. to Dismiss, Ex. I, at ¶ 3(C)-(E) (emphasis added).
[43]    *Chakov v. Outboard Marine Corp.*, 429 A.2d 984, 985 (Del. 1981).
[44]    *Adams v. Jankouskas*, 452 A.2d 148, 156 (Del. 1982).
[45]    *Id.*
[46]    *Deuley v. DynCorp Int'l, Inc.*, 8 A.3d 1156, 1163 (Del. 2010).

other things, breached the Lease Agreement by failing to provide advanced notice of driveway repairs, failing to minimize interference with Valve Acquisition's occupancy of the property, and violating Valve Acquisition's right to peaceful and quiet enjoyment of the property.[47] The Illinois Action complaint asserts that Asylum sent a letter on September 12, 2019, declaring Valve Acquisition in breach of its lease for prior renovations to the interior of the property. On November 6, 2020, the parties executed the aforementioned Settlement Agreement to resolve the Illinois Action.

In the instant Amended Complaint, Plaintiff asserts that Valve Acquisition breached the Lease Agreement "[b]ecause [Valve Acquisition] renovated the 775 Lively Drive Property without written permission from Asylum."[48] Plaintiff concedes that the disputed renovations in the Amended Complaint are the same as those alleged in the Illinois Action,[49] but claims those allegations were merely background facts and thus, not within the plain meaning of the Settlement Agreement.

The Court is not persuaded by Plaintiff's argument. The Settlement Agreement's plain and unambiguous language states that Plaintiffs agreed to release all claims that they "had, have, or may have against [Valve Acquisition] *as a result, or arising out of, the events and transactions alleged* in the [Illinois Action]."[50] In

---

[47]    Def.'s Mot. to Dismiss, Ex. J ¶ 60.
[48]    Am. Compl. ¶ 72.
[49]    Pls.' Answering Br. at 24-25.
[50]    Def.'s Mot. to Dismiss, Ex. I, §§3(C)-(D).

the Illinois Action, Valve Acquisition alleged that it made renovations to the property in mid-September 2019. These same renovations are now the subject of the instant breach claim. Accordingly, Plaintiff may have had a breach of lease claim resulting from those renovations in September 2019, but is contractually barred from bringing those claims now by the plain language of the Settlement Agreement. To allow any other result would not only be inapposite to the language signed by all relevant parties, but would lead to a dangerous loophole for continued litigation that flies in the face of the spirit of settlement agreements. Therefore, Valve Acquisition's Motion to Dismiss is Granted as to Count III.

### COUNTS IV & V – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; DECLARATORY JUDGMENT ACT REQUEST TO VOID DISCLAIMER PROVISION IN COMMISSION AGREEMENT

In Count IV of the Amended Complaint, Plaintiff Light Years[51] alleges that Defendant violated the implied covenant of good faith and fair dealing inherent in the Commission Agreement. Specifically, the Amended Complaint alleges that "[t]he Commission Agreement's implied covenant of good faith and fair dealing required [Valve Acquisition] to refrain from causing business losses in the UK." It continues, that "[b]y firing Mr. Murphy and his son, Colin…and failing to find adequate

---

[51] Again, the Court is assuming that only Plaintiff Light Years is bringing this allegation, as the Amended Complaint does not specify and it is the only party with standing to do so, as neither Plaintiff Murphy, nor Asylum were a party to the Commission Agreement.

replacements for them, the Buyer damaged the AVT Business…" and "[b]y negligently or willfully mismanaging the AVT Business in the UK, the Buyer engaged in unreasonable conduct and prevented Light Years from receiving the benefit of the bargain."[52]

In its motion, Valve Acquisition contends that the implied covenant of good faith and fair dealing does not apply to the instant dispute insofar as Delaware courts will not apply this implied covenant when the contract directly addresses the conduct at issue. Valve Acquisition further asserts that the Commission Agreement did not guarantee success of the Cadent deal and accordingly maintains that it is improper to bring a claim of this nature.

Count V of the Amended Complaint, in which Plaintiff seeks a declaratory judgment pursuant to 10 Del. C. Sections 6501, et al. is necessarily intertwined with Count IV. Through Count V, Light Years asks this Court for a declaration that Section 1.7 of the Commission Agreement, which disclaims any express or implied warranties as to "any potential success" of the UK business is illusory and unenforceable. Valve Acquisition bases its argument against the validity of Count IV on Section 1.7 of the Commission Agreement. As a result of these intertwined arguments, Counts IV and V will be addressed in concert now.

---

[52] Am. Compl. ¶¶ 77-79.

## 1. COUNT IV

"To state a claim for breach of the implied covenant, a claimant must allege: (1) a specific implied contractual obligation; (2) a breach of that obligation; and (3) resulting damage."[53] The implied covenant of good faith and fair dealing inheres in every contract[54] and is a "cautious enterprise that is best understood as a way of implying terms in the agreement, whether employed to analyze unanticipated developments or to fill gaps in the contract's provisions."[55] The Court will imply contract terms when a contracting party "acted arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected."[56] The parties' reasonable expectations are "assessed at the time of contracting."[57]

Generally, the implied covenant does not apply when the contract authorizes or addresses the disputed conduct.[58] Further, "Delaware's implied duty of good faith and fair dealing is not an equitable remedy for rebalancing economic interests after events that could have been anticipated, but were not, that later adversely affected

---

53    *Intermec IP Corp. v. TransCore, LP*, 2021 WL 3620435, at *11 (Del. Super. Ct. Aug. 16, 2021).

54    *Dieckman v. Regency GP LP*, 155 A.3d 358, 367 (Del. 2017).

55    *Oxbow Carbon &Minerals Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*, 202 A.3d 482, 506-07 (Del. 2019) (internal quotation marks and citations omitted).

56    *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010).

57    *Dieckman*, 115 A.3d at 367.

58    *Oxbow*, 202 A.3d at 506-07; *Nemec v. Shrader*, 991 A.2d 1120, 1125-26 (Del. 2010).

one party to a contract."[59] Rather, "the covenant is a limited and extraordinary legal remedy."[60] The Court cannot "re-write the agreement's express terms in the guise of implying a covenant."[61] Instead, "if the contract is truly silent on the matter at hand,"[62] the Court will effectuate the parties' reasonable expectations as expressed by the contract by implying terms that the parties would have agreed to had they thought to consider them.[63]

"No contract, regardless of how tightly or precisely drafted, can wholly account for every possible contingency."[64] Occasionally, when coming to an agreement, parties "have understandings or expectations so fundamental that they did not need to negotiate about those expectations."[65] In these situations Delaware law has utilized the implied covenant to imply "contractual terms that are so obvious . . . that the drafter would not have needed to include the conditions as express terms in the agreement."[66]

Here, the Amended Complaint contains allegations beyond market

---

[59]  *Nemec*, 991 A.2d at 1128 (Del. 2010).
[60]  *Id.*
[61]  *Intermec*, 2021 WL 3620435, at *12 (internal quotation marks omitted).
[62]  *Oxbow*, 202 A.3d at 507 (internal quotation marks omitted).
[63]  *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005).
[64]  *Intermec*, 2021 WL 3620435, at *12 (quoting *Glaxo Grp. Ltd. V. DRIT LP*, 248 A.3d 911, 919 (Del. 2021).
[65]  *Katz v. Oak Indus., Inc.*, 508 A.2d 873, 880 (Del. Ch. 1986).
[66]  *Dieckman*, 115 A.3d at 361.

-23-

fluctuations, which all parties agree were negotiated in the Commission Agreement. Plaintiff asserts that Valve Acquisition breached the implied covenant of good faith and fair dealing through its willful mismanagement and unreasonable behavior in managing the UK business. It is undisputed that there was no guarantee of success that was contracted in the Agreement, however, Plaintiff is not alleging Defendant should pay because the market did not perform as Light Years had hoped.

Drawing all reasonable inferences in favor of Plaintiff, the Amended Complaint alleges that Defendant undertook purposeful acts that would damage the business, which is beyond what was negotiated.[67] Specifically, Plaintiff claims that the Defendant unreasonably delayed additional product testing requested by Cadent to the point where the prospective business deal fell apart.[68] The Court finds that a provision barring such bad faith conduct is so obvious that had the parties considered it, they would have included the provision in the Commission Agreement.[69] Accordingly, at this early stage of litigation, Plaintiff has pled a reasonably conceivable implied obligation in the Commission Agreement prohibiting Valve Acquisition from taking unreasonable actions to destroy promising business

---

[67]  *See Nationwide Emerging Managers v. Northopointe Holdings, LLC*, 112 A.3d 878 (Del. 2015) (Implied covenant of good faith and fair dealing only appropriate to fill gaps and not to re-write contract).

[68]  Am. Compl. ¶¶ 32, 79.

[69]  *See Dieckman*, 115 A.3d at 361.

opportunities.

Plaintiff, through Valve Acquisition's actions and the loss of the deal with Cadent, has sufficiently pled at this stage, a breach of the implied obligation and resulting damages, given the Court's obligation to accept all reasonably well pled allegations as true. Should discovery prove there is no valid claim here, Defendant remains armed with options. However, at this stage in the litigation, evaluating this claim under the Rule 12(b)(6) standard, there is a reasonable set of circumstances in which Plaintiff could recover given the pleadings. As a result, the Motion to Dismiss is denied as to Count IV.

## 2. COUNT V

Plaintiff alleges that, "[s]ection 1.7 of the Commission Agreement, which fails to define "potential success" as it "… [i]s so vague that it is unenforceable" and as a result, "[s]ection 1.7 renders the Commission Agreement illusory."[70] In this count, Plaintiff Light Years seeks declaratory judgment to this effect and for the Court to sever this section from the Commission Agreement.

Section 1.7 reads as follows:

> <u>No Warranty of Success.</u> THE COMPANY DISCLAIMS ANY WARRANTIES OR REPRESENTATIONS, WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, AS TO ANY POTENTIAL SUCCESS OF THE TRANSACTIONS DESCRIBED IN THIS AGREEMENT.[71]

---

[70]    Am. Compl. ¶¶ 82-83.
[71]    Def.'s Mot. to Dismiss, Ex. F § 1.7.

The Court, however, declines to make a finding under the Declaratory Judgment Act and rule that Section 1.7 of the Commission Agreement is vague and unenforceable. Because the Court finds in Count IV that Plaintiff has sufficiently pled allegations that Defendant's conduct exceeded the contractual warranties notwithstanding Section 1.7, the Court does not find that there is an "actual controversy" that exists that warrants the application of the Declaratory Judgment Act (hereinafter "DJA").[72]

The purpose of the DJA is to "to enable the courts to adjudicate a controversy prior to the time when a remedy is traditionally available and, thus, to advance the stage at which a matter is traditionally justiciable."[73] Courts will not entertain suits seeking an advisory opinion or an adjudication of hypothetical questions under the guise of a request for declaratory judgment. However, courts will entertain declaratory relief where "the alleged facts are such that a true dispute exists and eventual litigation appears to be unavoidable."[74] In reviewing the elements that must be found before the "actual controversy" requirement can be met, the Court looks to whether the claim (1) is a controversy involving the rights or other legal relations of

---

[72] *Rollins Intern, Inc. v. International Hydraulics, Corp.*, 303 A.2d 660, 663 (Del. 1973).

[73] *Id.*

[74] *Id.*

the party seeking declaratory relief; (2) asserts a right or other legal interest against one who has an interest in contesting the claim; (3) is between parties whose interest are real and adverse; and (4) is ripe for judicial determination.[75]

Here, while it is obvious that the now-tarnished business relationship between these two parties has turned extremely litigious, there simply is no true controversy about Section 1.7 that warrants declaratory relief. Light Years' dispute over the Commission Agreement amounts to allegations concerning unreasonable and willful actions taken by Defendant to deprive Light Years of its benefit of the bargain. Because the Commission Agreement does not address such a situation, the Court finds that a claim of breach of the implied covenant of good faith and fair dealing under Count IV may proceed at this early stage in litigation. The dispute does not center around the "potential success" language, rather, it involves claims of willful tactics that led to alleged damages. Thus, declaratory judgment on the enforceability of Section 1.7 does not advance any of Light Years' asserted claims and is tantamount to an advisory opinion. Accordingly, Light Years' claim is not ripe for judicial determination and thus, does not meet the "actual controversy" requirement under the DCA.

While, the parties are free in litigating Count IV to argue the application of

---

[75]     *Id.* At 662-663.

Section 1.7 to the allegations raised in Count IV, that alone does not render it an "actual controversy" to invoke the DJA. Accordingly, Defendant's Motion to Dismiss on Count V is granted.

**COUNT VI– INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ("IIED")**

Plaintiff Murphy[76] alleges in Count VI, that "…[Defendant] engaged in extreme and outrageous conduct by firing his family members, by harassing him and his family members, by making accusations in a police report and by seeking a TRO and petitioning for a restraining order against him based on malicious lies and personal attacks." Plaintiff further alleges that Defendant "intentionally or recklessly caused severe emotional distress and bodily harm to Mr. Murphy through its actions."[77]

Defendant, in its motion, argues that Plaintiff's IIED claim should be dismissed because (1) both the Separation Agreement and the Settlement Agreement contractually bars the basis of the claim and (2) to the extent the basis is not contractually barred, Plaintiff fails to state a viable IIED claim. Defendant argues that the Separation Agreement contained a waiver that barred all claims relating to

---

[76] Once again, the Court is assuming that this count in the Amended Complaint is referring to Plaintiff Murphy. The Amended Complaint does not specify which Plaintiff sets forth this claim, the only logical conclusion is that this allegation is for Plaintiff Murphy alone.

[77] Am. Compl. ¶¶ 86-87.

Plaintiff Murphy's, employment or termination of employment and avers that the IIED claim asserts allegations related to Plaintiff's employment and termination. Further, to the extent that these claims relate to the breach of the Lease Agreement, those allegations are barred by the Illinois Settlement Agreement. Defendant further argues that, even if not barred by either Agreement, Plaintiff's claims are not based on extreme and outrageous conduct and accordingly, the IIED claim must be dismissed.

Plaintiff argues that the Separation Agreement has no effect on this claim because the IIED claim is not based on Murphy's employment or termination. Plaintiff further contends that the allegations meet the standard of extreme and outrageous conduct and that the IIED claim is well-pled and would be inappropriate to dismiss at this stage. Plaintiff's response was silent as to the applicability of the Settlement Agreement to this claim.

Delaware courts apply Section 46 of the Restatement (Second) of Torts in analyzing IIED claims.[78] An IIED claim arises when "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the

---

[78] *Pazuniak Law Office LLC v. Pi-Net Int'l, Inc.*, 2017 WL 4019162, at *5 (Del. Super Ct. Aug. 25, 2017).

other results from it, for such bodily harm."[79] Courts have interpreted extreme and outrageous behavior to mean "conduct that exceeds the bounds of decency and is regarded as intolerable in a civilized community."[80] "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery."[81] If reasonable minds may differ on this interpretation, however, the question is left for the jury.[82]

Plaintiff bases his IIED claim on the following conduct: (1) Defendant's firing the family members of Kevin Murphy; (2) Defendant's filing of an alleged false police report; (3) Defendant bringing baseless litigation; and (4) Defendant verbally harassing Kevin Murphy and his family members.[83] Taken altogether, the Court finds that Plaintiff's IIED claim fails to state a claim as a matter of law.

### 1. THE FIRING OF PLAINTIFF'S FAMILY MEMBERS

Plaintiff's first basis of the IIED claim rests on the firing of his family members.[84] As part of the sale of the AVT business, Valve Acquisition hired Plaintiff's brother, two sons, and stepson as at-will employees.[85] Valve Acquisition

---

[79]  *Spence v. Cherian*, 135 A.3d 1282, 1288-89 (Del. Super. 2016).
[80]  *Hunt ex rel. DeSombre v. State of Delaware*, 69 A.3d 360, 367 (Del. 2013).
[81]  *Dollard v. Callery*, 185 A.3d 694, 704 (Del. Super. 2018).
[82]  *Pazuniak*, 2017 WL 4019162 at *5.
[83]  Am. Compl. ¶ 86.
[84]  *Id.*
[85]  APA § 6.7(a).

fired Plaintiff's brother on October 10, 2018. Eleven months later, on September 12, 2019, nearly sixteen months after the sale, Asylum sent a Notice of Default to Valve Acquisition regarding the disputed breach of the Lease Agreement. That same day, Valve Acquisition fired Plaintiff's sons and stepson.[86] Plaintiff suggests that these firings sufficiently states a claim of extreme and outrageous conduct that is "intolerable in a civilized community."[87] The Court disagrees.

Plaintiff's argument fails for three reasons. First, the Settlement Agreement contractually bars Plaintiffs from bringing claims against Valve Acquisition "as a result of, or arising out of, the events and transactions alleged in the [Illinois Action]."[88] In the Illinois Action complaint, Valve Acquisition alleged that the firing of Murphy's stepson led Murphy to engage in wrongful and harassing conduct aimed at Valve Acquisition.[89] Therefore, a claim for IIED based on the firing of Murphy's stepson arises out of an event alleged in the Illinois Action and is thus, contractually barred.

Second, the Amended Complaint fails to identify the circumstances surrounding the firing of Plaintiff's family members, nor does it identify Plaintiff's emotional distress or bodily harm. At the motion to dismiss stage, the Court accepts

---

[86]     Am. Compl. ¶ 37.
[87]     *Hunt,* 69 A.3d at 367.
[88]     Def.'s Mot. to Dismiss, Ex. I, at ¶ 3(C)-(E).
[89]     Def's Mot. to Dismiss, Ex. J, at ¶ 4.

all well-pled factual allegations as true. However, the Court is entitled to reject conclusory allegations unsupported by specific facts.[90] Here, Plaintiff fails to provide any detail about how the firing of his family members amounts to extreme and outrageous conduct and neglects to allege any emotional distress or bodily harm suffered because of the firings. As at-will employees, Valve Acquisition could have fired Plaintiff's family members for no reason at all. Accordingly, the bald allegations asserted here do not rise to the level of well-pled allegations sufficient to state a claim of extreme and outrageous behavior.

Third, when a claim for IIED is derived from conduct directed at a third person, the claimant must be present at the time of the conduct.[91] Here, Murphy is alleging an IIED claim based on Valve Acquisition firing his family members. The Amended Complaint is silent as to whether Murphy was present at the time his family members were fired. Murphy, in his answering brief, alleges that he was in the room next door and was with his family members immediately after they were fired, however he provides no supporting authority for his argument that this satisfies the presence requirement. Delaware law is clear that briefs do not amend the pleadings.[92] The Amended Complaint controls. As such, Murphy fails to allege a cognizable claim

---

[90]    *Intermec*, 2021 WL 3620435, at *11.

[91]    *Cooper v. Bd. of Educ. of Red Clay Consol. Sch. Dist.*, 2009 WL 3022129, at *1 (Del. Super. Ct. Sept. 16, 2009).

[92]    *Intermec*, 2021 WL 3620435, at *24, n. 214.

-32-

for IIED based on the firing of his family members.

Only Plaintiff Murphy is a party to this litigation and the Court finds he has failed to plead a connection between the actions against his family members and any severe emotional distress he may have suffered as required under an IIED claim. Any arguments about Plaintiff's own firing and the personal effects on Plaintiff himself are likewise barred by the Separation Agreement.

### 2. CLAIM THAT DEFENDANT FILED AN ALLEGED FALSE POLICE REPORT

The second basis of Plaintiff's IIED claim concerns allegations that Defendant filed a police report falsely accusing Plaintiff of criminal behavior. On November 11, 2019, Defendant filed a police report after finding damage to a window caused by a low-caliber bullet.[93] A Valve Acquisition employee accused Murphy of causing the damage to the police.[94] No charges or consequences were alleged to have resulted from the report and the Amended Complaint does not allege that Plaintiff, in fact, suffered any emotional or bodily harm because of the report.

Plaintiff's contention fails to state a claim of IIED. Filing a police report, especially one that does not result in charges, does not amount to extreme and outrageous conduct that is intolerable in a civilized community. In support of his

---

[93]   Am. Compl. ¶ 43.
[94]   *Id.*

claim, Plaintiff relies on *Esposito v. Townsend*[95] for the proposition that filing reports to governmental authorities can sustain a claim for IIED at the motion to dismiss stage.[96]

In *Esposito*, the parents of a minor alleged, among other things, a claim for IIED—on their and the minor's behalf—based on a child abuse report made by the minor's school. The minor explained to his teacher and school nurse that a rash on his neck and face was caused by irritation from scuba equipment. Disregarding the explanation, the school filed a report of child abuse. The minor was subjected to a physical examination that required the minor to remove his pants in front of a family service case worker and school nurse. Additionally, the case worker interviewed the minor and the parents regarding the suspected abuse. As a result, the minor suffered anxiety and was unable to attend school for the rest of the term. The facts alleged in the instant matter, however, are readily distinguishable from the facts in *Esposito*.

Here, Plaintiff alleges that Defendant filed a police report accusing him of damaging the building without any proof. Defendant was well within its rights to file a police report after discovering damage to its building. In *Esposito*, the minor was subjected to an investigation that involved an invasive physical examination and interviews. As a result, the minor suffered anxiety and was unable to attend school.

---

[95]     *Esposito v. Townsend*, 2013 WL 493321 (Del. Super. Ct. Feb. 8, 2013).
[96]     Pls.' Answering Br. at 29-30.

-34-

In the instant matter, the Amended Complaint is silent as to the consequences of the report. Additionally, Plaintiff alleges no emotional or bodily harm because of the filed police report.

### 3. FILING BASELESS LITIGATION

Plaintiff's third basis of the IIED claim rests on previous litigation between Defendant and Plaintiff.[97] Specifically, Plaintiff argues that Defendant's filing of the Illinois Action and seeking a restraining order as part of that action constitutes extreme and outrageous conduct because the foundation of the lawsuit was based on "malicious lies."[98]

In accordance with the Settlement Agreement, Plaintiff is contractually barred from asserting claims "as a result of, or arising out of, the events and transactions alleged in the [Illinois Action]."[99] Here, Plaintiff asserts that Defendant, by filing the Illinois Action, acted with extreme and outrageous conduct that resulted in emotional harm. Plaintiff cannot now rely on the Illinois Action to support his IIED claim because such a claim "arises out of" events and transactions alleged in the Illinois Action. Accordingly, the Court finds that Plaintiff is contractually barred from asserting this basis to support his IIED claim.

---

[97] Am. Compl. ¶ 86.
[98] *Id.*
[99] Def.'s Mot. to Dismiss, Ex. I, at ¶ 3(C)-(E).

-35-

### 4. HARASSMENT OF PLAINTIFF AND HIS FAMILY MEMBERS

The final basis of Plaintiff's IIED claim is the allegation of general harassment against himself and his family members. The Amended Complaint fails to specify which alleged events or actions constitute the disputed harassment. After a comprehensive review of the Amended Complaint, the Court finds that Plaintiff's pleadings fail to sufficiently state a claim upon which relief can be based.

Given the Amended Complaint's lack of specificity, the Court was left trying to discern which of the allegations could potentially make up a claim of harassment. In the response to the Motion to Dismiss, Plaintiff references heated arguments with Defendant employees. However, none of these allegations are specified or pled in detail in Count VI. The Court declines to make out a claim for Plaintiff here.

However, the Court finds that even had Plaintiff specified which of Defendant's actions comprise the alleged harassment, such harassment allegations are similarly barred by the Settlement Agreement. Specifically, Plaintiff's claims concerning the heated exchanges over the renovations and driveway construction arise from events alleged in the Illinois Action complaint.[100] The Illinois Action complaint alleged Plaintiff improperly solicited former employees and sent Plaintiff "a cease and desist letter to no avail."[101] Accordingly, the Settlement Agreement

---

[100] Def.'s Mot. to Dismiss, Ex. J, at ¶¶ 4, 39-41.
[101] *Id.* at ¶¶ 36-38.

contractually bars Plaintiffs from asserting such allegations here.

In striking the prohibited allegations, and in light of the fact that Plaintiff's claim fails to sufficiently plead any emotional or physical harm as a result of any allegations of harassment, the Court is left with little to support an IIED claim. Even in drawing all reasonable inferences in favor of Plaintiff, the Court finds that the allegations are either barred by the Settlement Agreement, the Separation Agreement or do not amount to extreme and outrageous conduct. Accordingly, Count VI of the Amended Complaint is dismissed.

### E. CONCLUSION

Accordingly, with respect to Counts I, III, V and VI, Defendant's motion is GRANTED. Count IV survives and the motion, to that count alone, is DENIED.

IT SO ORDERED.

*Danielle J. Brennan*
_____
Judge Danielle J. Brennan